UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

APR 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

LEVENSTON HALL,                    )
     Plaintiff,              )
v.                                 )            No. 06-1034 (JDB)
UNITED STATES OF AMERICA,          )
     Defendant.              )

## PLAINTIFF'S RESPONSE TO MOTION TO DISMISS

Now comes the Plaintiff, Levenston Hall, pro se, and as and for his
Response to Defendants' Motion to Dismiss states as follows:

1. This is an action to recover money damages resulting from the
failure of the United States Probation Department to comply with
the requirements of Title 5 U.S.C. §552a(e)(5).

2. Plaintiff consents to the substitution of the United States of
America as the sole Defendant in this action.

3. Plaintiff urges that this is the proper venue for this action as
both the United States Probation Department and the sole Defendant,
United States of America, maintain their headquarters in Washington
D.C..

4. The acts complained of in this matter are the deliberate indiffer-
ence and refusal of the personnel of the United States Probation
Department to  investigate and correct false information contained
in Plaintiff's file.

5. The acts complained of in this matter occurred in October, 2005
through January, 2006 during which period Plaintiff provided sworn
evidence of the inaccuracies contained in his Presentence Investi-
gation Report to personnel of the United States Probation Department
and during which period the United States Probation Department re-
fused to investigate and correct the false information. (See, Ex-
hibits A & B ).

6. Plaintiff filed a Federal Tort Claim in February of 2006 which
was denied in April, 2006.

7. This action was filed on May 17, 2006.

8. Thus the filing was made well within the two year statute of limitations period allowed.

9. Plaintiff urges that the substance of the inaccuracies claimed in his file have never been decided by a court.

10. Plaintiff's complaint is not related to the initial preparation of the report but rather relates to the refusal to correct the PSI after plaintiff has provided new evidence, never made available to any court, that the report contains factually inaccurate statements.

11. The refusal of the United States Probation Department to investigate and correct the report after having been presented with compelling evidence of its inaccuracy is the action that gives rise to this cause of action; it is this refusal that violates the Privacy Act.

12. The obligation of a government agency to maintain factually accurate files and to investigate claims of inaccuracy is made clear in the governing statute, 552a(e)(5) as discussed in Sellers v. Bureau of Prisons, 959 F.2d 307 (1992).

13. The provisions of 552a(g)(1)(C) and 552a (g)(4) allow for an action in the event of the failure to maintain accurate records and for the recovery of money damages.

14. Here the inaccuracies relate to the events of September 18, 1997 involving a face to face meeting between Killeen, Texas Police Department Officer, Scott Lorenz and an individual known to him as Ben Hall. (See, Exhibit C ).

15. The Presentence Investigation Report maintained by the United States Probation Department asserts that this individual is Levenston Hall, the Plaintiff.

16. Plaintiff has submitted evidence in the form of transcripts from two independent sworn testimonies (one during Grand Jury deliberations and one during Plaintiff's criminal trial) which prove that Plaintiff could not possibly have been the ben Hall who met with Officer Lorenz on September 18, 1997.

17. First, Officer Lorenz swore that he had "not personally" seen Plaintiff sell crack cocaine before December 10, 1997. (Exhibit D ).

18. Then, he swore at trial, that he had only "seen pictures of" Plaintiff prior to November 24, 1997. (Exhibit E ).

18. Ben Hall met face to face with Officer Lorenz on September 18,
1997, sold him crack cocaine, conversed with him and provided him
with pager numbers; Ben Hall could not be Plaintiff.

19. This case, then repesents a "typical" Privacy Act case
(See, Strang v. United States Arms Control and Disarmament Agency,
864 F.2d 859 (D.C. Cir. 1989).) wherein Plaintiff seeks damages for
failure to correct clearly inaccurate statements contained in his
file, presents probative evidence to support his claim of inaccuracy
the agency refuses to investigate or correct his file and subsequently
adverse decisions are made as a result of this inaccurate informa-
tion.

20. Here the , "provable fact" is the presence of the Plaintiff
during an undercover drug purchase meeting on September 18, 1997.

21. The evidence in support of that contention is an unsworn police
report that refers to Ben Hall.

22. The proof that Plaitniff is not Ben Hall is the uncontradicted,
unchallenged, sworn testimony of the police officer who sat face
to face with "Ben Hall" during the drug buy.

23. Plaintiff contends that the Defendant, once presented with evi-
dence that legitimately calls the PSI's accuracy into question, is
bound by  the Privacy Act to independently investigate in order to
determine the accuracy of its files in order to "assure fairness."
to Plaintiff. Sellers, 959 F2d 307, 310.

24.  Here the United States Probation Department refused to under-
take an independant investigation; rather it adopted the position
that the decision of the sentencing judge forecloses any further
inquiry.

25.  Clearly Sellers which was an example of a completed sentencing
following which an inmate challenged facts contained in his PSI re-
port belies that position.

26. The sworn testimony presented by Plaintiff was never before the
sentencing judge.

27. Nor does the statute excuse maintaining inaccurate facts in a
file based upon a prior decision.

28. Neither does it relieve an Agency of the obligation to investi-
gate and correct errors tha are detected.

29. Finally, the inaccuracies contained in the PSI report have resulted in decisions to Plaintiff's detriment.

30. Plaintiff's custody level classification is determined based upon factors recited in the PSR.

31. Plaintiff is considered a leader and organizer of his crime only because of the incident of September 18, 1997 at which he was, factually, not present. This factor increases his custody level which serves to make him ineligible for lower custody status, which in turn makes him ineligible for a furlough and other Federal Bureau of Prisons' programs that are custody level-dependent.

32. Plaintiff has been and will continue to be exposed to more dangerous prison environments as a result of his custody level and points.

33. The Privacy Act provides that an agency must determine the accuracy of "each filed item of information" Doe v. United States, 821 F.2d 694 (D.C. Cir. 1987).

34. The court in Doe observed it is feasible necessary and proper for the agency to do so "and, in turn [for] the district court" to make such determination. Doe at 699.

35. Here. as in Strang and Sellers the "truth is relatively easily ascertainable". Sellers at 311

36. The sworn testimony of the investigating officer can be reconciled with the police report of the events of September 18, 1997 only if the "Ben Hall" identified in the police report is someone other than Plaintiff. ( See, also, Exhibit F ).

37. The United States Probation Department is obligated to make a determination, correct its records and inform the Federal Bureau of Prisons of the change.

38. It's refusal to do so gives rise to financial damages and presents the court the opportunity to make its own factual determination from the evidence submitted or to hold an evidentiary hearing for that purpose.

39. Title 5 U.S.C. §552a(g)(1)(C) requires that " as long as the information contained in an agency's files is capable of being verified, then... the agency must take reasonable steps to maintain accuracy of the information to assure fairness to the indivi-

dual. <u>Sellers</u> at 312.

40. Plaintiff continues to suffer the consequences of the the Probation Department's willful failure to undertake the reasonable steps (or any investigation whatsoever)  required by the statute.

WHEREFORE PLAINTIFF PRAYS FOR:

1. An order denying the Motion to Dismiss

2. A finding that, in fact, Plaintiff was not present at the September 18, 1997 drug sale made to Officer Scott Lorenz.

3. An order directing the Probation Department to eliminate any reference to that meeting and/or any transaction relating to or resulting from that meeting (ie. leadership and organizer role and subsequent drug sales )  from his Presentence report.

4. An order directing the United States Probation Department to notify the Federal Bureau of Prisons of the changes.

and

5. Assess appropriate money damages and other relief as the Court deems just under the  circumstances.

RESPECTFULLY SUBMITTED

LEVENSTON HALL, PRO SE

## CERTIFICATION OF SERVICE

The undersigned hereby declares under penalty of perjury that served the foregoing Plaintiff's Response to Motion to Dismiss upon Mr.  Alexander D. Shoaibi, Esq. Assistant United States Attorney, Judiciary Center Building, 555 4th St., N.W. , Civil Division, Washington, D.C. 20530, by mailing a copy thereof in a fully prepaid, first class postage envelope so addressed  and deposited in the inmate mail system, Federal Prison Camp, P.O. Box 12014, Terre Haute, Indiana 47801 on the 26th day of March, 2007.

_Levenston Hall_

LEVENSTON HALL

# EXHIBIT
# A

# UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### PROBATION OFFICE

**JOE ED CANALES**
CHIEF PROBATION OFFICER
SAN ANTONIO - ADMINISTRATION

**JOE E. SANCHEZ**
DEPUTY CHIEF PROBATION OFFICER
SAN ANTONIO - ADMINISTRATION

ADMINISTRATION
727 E. DURANGO BOULEVARD, ROOM A-405
SAN ANTONIO 78206-1203



**November 3, 2005**

**WACO**

800 N. FIFTH STREET
ALPINE 79830-3002

903 SAN JACINTO BOULEVARD, SUITE 121
AUSTIN 78701-2450

111 E. BROADWAY STREET, SUITE 200
DEL RIO 78840-5542

700 E. SAN ANTONIO AVENUE, SUITE 500
EL PASO 79901-7020

100 E. WALL STREET, SUITE P-108
MIDLAND 79701-5200

410 S. CEDAR STREET
PECOS 79772-3200

727 E. DURANGO BOULEVARD, ROOM B-310
SAN ANTONIO 78206-1200

800 FRANKLIN AVENUE, ROOM 100
WACO 76701-1936

Levenston Hall
#82299-080
c/o Federal Prison Camp
P. O. Box 12014
Terre Haute, Indiana 47801

RE:    **REQUEST FOR ADDENDUM**

Mr. Hall:

This is in response to your letter dated October 24, 2005.

An Addendum was completed in your case on October 28, 1998. Some of the issues you mentioned in your letter were addressed in the Addendum. At the Sentencing Hearing, the Court considered the issues addressed in the Addendum, which included the drug amount/base offense level, leadership role, and ability to pay a fine. After hearing argument from the Government and defense counsel on those issues, the Court adopted the findings and guideline applications in the presentence report (PSR).

I have been told by personnel at FPC Terre Haute that a copy of your PSR and Addendum is in your file. If you wish to review the Addendum, you need to follow the proper procedures when making that request known to personnel at FPC Terre Haute.

At this point in time, any other issues you may still have concerning your PSR and/or sentence can only be addressed by the sentencing Court as the United States Probation Office has no authority in these matters.

Re:    Hall, Levenston
       Dkt. #W-98-CR-006
       Page 2


                                    Sincerely,

                                    MELISSA SUNIGA
                                    Senior U. S. Probation Officer


MS

cc:    Victor A. Casillas, ADCUSPO, San Antonio, Texas

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### PROBATION OFFICE

**JOE ED CANALES**
CHIEF PROBATION OFFICER
SAN ANTONIO - ADMINISTRATION

**JOE E. SANCHEZ**
DEPUTY CHIEF PROBATION OFFICER
SAN ANTONIO - ADMINISTRATION

ADMINISTRATION
727 E. DURANGO BOULEVARD, ROOM A-405
SAN ANTONIO  78206-1203



**May 24, 2006**

**WACO**

800 N. FIFTH STREET
ALPINE 79830-3002

903 SAN JACINTO BOULEVARD, SUITE 121
AUSTIN 78701-2450

111 E. BROADWAY STREET, SUITE 200
DEL RIO 78840-5542

700 E. SAN ANTONIO AVENUE, SUITE 500
EL PASO 79901-7020

100 E. WALL STREET, SUITE P-108
MIDLAND 79701-5200

410 S. CEDAR STREET
PECOS 79772-3200

727 E. DURANGO BOULEVARD, ROOM B-310
SAN ANTONIO 78206-1200

800 FRANKLIN AVENUE, ROOM 100
WACO 76701-1936

Mr. Levenston Hall
Reg#82299-080
c/o Federal Prison Camp
P.O. Box 12014
Terre Haute, Indiana 47801

Re: Your letters addressed to this office

Mr. Hall:

I have reviewed the letters you have sent to Sr. USPO Suniga regarding the Pre Sentence Report and subsequent addendum prepared for the sentencing court prior to your sentencing of November 4, 1998.

Ms. Suniga's responses to your concerns have been frank, open, and informative about the steps you need to take in order for perceived sentencing concerns to be addressed.

As she has previously advised you on at least two separate occasions, your Pre Sentence Report was approved by the Court at time of sentencing and you were sentenced based on the information contained in that report which the Court ruled at time of sentencing to be an accurate rendition of your involvement in the instant offense. Your attorney of record, Stan Schweiger, had filed objections to the Pre Sentence Report. However, at time of sentencing, you should recall the sentencing court overruled all his objections and determined the Pre Sentence Report to be accurate, a fact Ms. Suniga has already pointed out to you. You should also remember the Court determined your range of imprisonment to be 188 to 235 months. He then sentenced you to a period of 235 months confinement.

After reading Ms. Suniga's responses to your concerns it is evident she has gone the extra mile in providing assistance to you. She provided you with accurate recommendations for the steps you need to take in having your concerns laid to rest. However, it is also apparent you continue to wilfully ignore her recommendations as evidenced by your continuing written dialogue with her.

I will repeat the following statement one more time for clarification purposes: The U. S. Probation Office can no longer assist you with your concerns over your Pre Sentence Report or the Addendum which was prepared over 7 years ago nor can my office assist you with the 235 month

Re:    Hall, Levenston
        Dkt. #W-98-CR-006
        Page 2

sentence imposed in your case.

Therefore, I have instructed Ms. Suniga this date to ignore and not respond to any other written communication from you concerning your Pre Sentence Report, Addendum, or the sentence imposed by The Court in your case.  Only if you can prove you have exhausted the other avenues for relief provided you by Ms. Suniga will I believe any future response from my office will be appropriate.  Unless you meet this standard of seeking relief, any correspondence sent to this office asking for assistance in either of these areas will not receive a response and will simply be placed in your case file.

I simply do not know how much clearer our office needs to be regarding your concerns.

Either address your sentencing concerns to the appropriate authority (Appellate Court or Sentencing Court) and receive a response,  or continue to address letters to our office which will no longer elicit a response.  The choice remains with you.

Sincerely,

John P. Ballmann
SUSPO
Waco Division W/D of Texas

cc:    Victor A. Casillas, ADCUSPO, San Antonio, Texas

# EXHIBIT
# C

**Killeen Police Department**
Investigative Supplement Report - C (OCD)

| Complainant: | Location: | Beat: | Case# |
|---|---|---|---|
| State of Texas | 1105 S. Ft. Hood, Killeen | 307 | 97- 38836 |
| Offense: | Date: | Page: | Class: |
| Delivery of cocaine over 1 gram under 4 | September 19, 1997 | 1 | |

On 9-18-97, at approximately 1:00pm I met with a confidential informant who told me that **Ben Hall** had agreed to meet me at the McDonalds at 1105 S. Ft. Hood St., Killeen. Investigator Hatfield has worked with this informant numerous times in the past and told me that this informant was reliable. This informant paged Hall and told him that he and I would meet him at the McDonalds at approximately 1:30pm. Hall was not aware that I was a police officer and told the informant that he would sell me crack cocaine. At approximately 1:30pm I drove into the parking lot of the McDonalds located at 1105 S. Ft. Hood and parked. The informant was seated in the front seat of my vehicle. Hall walked to my vehicle and then got inside the back seat. Hall then pulled a ziploc bag out of his shorts. The bag contained what appeared to be approximately 5 grams of crack cocaine. Hall asked me how much I wanted and I told 100 dollars worth. Hall then poured several pieces of the crack cocaine in my hand and I gave him 100 dollars in Killeen Police Department Organized Crime Division money in the following denominations:   20 - F94332365A / 20 - K61721702B / 20 - K61721699 / 20 - K92889216A / 20 - G12027828D.

After I gave the money to Hall he gave me two pager numbers, 616-1586 & 616-1506, which I wrote down on a piece of paper. Hall told me that I could call him later in the day if I wanted more. Hall then got out of the vehicle and walked away. The conversation between the informant, Hall, and I was recorded on audio tape. Investigator Turck, Investigator Garner, Investigator Clemons, and Investigator Miller listened to the conversation by means of a transmitter.

I later tested the substance Hall sold me using a Falcon Blue test kit # 3. The test kit indicated that the substance showed a presumptive presence of **cocaine**. The substance weighed approximately **1 gram** and was submitted into evidence. The audio tape was also submitted into evidence.

| Reporting Officer: | Supervisor Approving: | Suspect Description this page |
|---|---|---|
| Lorenz # 104 | | ( ) Yes ( ) No |
| Status: | Reviewer: | UCR Disposition: |
| ( ) Open ( ) Suspended ( ) Closed | | |

*EXHIBIT II*

# EXHIBIT
# D

MR. SCOTT LORENZ  -  FEBRUARY, 10 1998

1   capacity for you on many occasions?

2       A    Many times.

3       Q    And has he testified for you?

4       A    I don't think he's ever testify yet.

5       Q    And is he willing to testify in this case?

6       A    Yes, he is.

7       Q    And if you would is, what occurred on December

8   the 10th?

9       A    On December 10th, I guess approximately 6:30 we

10  met with Harrison probably around 5:00 and he agreed to

11  purchase crack cocaine from a person identified as

12  Livingston Hall.  And Livingston Hall goes by the name Ben

13  on the street.  Livingston Hall has been selling crack

14  cocaine all over town and particularly this one place at

15  3317 Keith.

16      Q    Have you -- had you previously seen him sell

17  crack cocaine?

18      A    I had not personally but I had other informants

19  that would tell me he did.  We had purchased crack cocaine

20  out of a residence that he was living in on at least two

21  occasions.

22      Q    And what did your informant do on that day, on

23  the 10th?

24      A    He went inside the 3316 Keith, Lot Number 74,

25  made contact with a female who goes by Coco.  Her name is

# EXHIBIT
# E

1    you were in an undercover role on November the 24th, 1997?

2    A    Yes, I was.

3    Q    And, sir, at that time, you were conducting surveillance,

4    is that correct?

5    A    That's correct.

6    Q    And an informant was going to make a buy, is that correct,

7    in a mobile home?

8    A    That's correct.

9           MR. SCHWIEGER:   I'm going to object to leading, Your

10   Honor.

11          THE COURT:   Sustained.

12   BY MR. SNYDER:

13   Q    And if you would, what was the address of the mobile home?

14   A    I believe it was 3317 Keith.

15   Q    And who resided there, to your knowledge?

16   A    A black female by the name of Sabrina Proctor.

17   Q    And, sir, had you been in that residence while you were in

18   an undercover capacity?

19   A    Yes, I'd been in there several times.

20   Q    And, sir, what goes on inside of that residence when you

21   were present?

22   A    Sabrina Proctor and others that hang out at that residence

23   sell "crack" cocaine and also use "crack" cocaine.

24   Q    And if you would, sir, is, were you aware that the

25   confidential informant, Mr. Hairston, went in there that

1   has identified the Defendant.

2                THE COURT:   The record will so reflect.

3   BY MR. SNYDER:

4   Q    And if you would, sir, is, when -- had you seen Mr. Hall

5   before?

6   A    I had seen pictures of him.

7   Q    And when Mr. Hall entered, sir, is, what -- what happened?

8   A    Mr. Hall entered, he walked past me into the back room --

9   into one of the back rooms of the trailer with Sabrina Proctor

10  and Russell Hairston.

11  Q    And when they -- and how long were they in the back

12  bedroom?

13  A    Several minutes.

14  Q    And what -- and who left, then, who came out first, do you

15  recall?

16  A    I believe Russell Hairston came out first, and then we left

17  together, Mr. Hairston and I.

18  Q    And when Mr. Hairston and you departed the residence, did

19  he give you anything?

20  A    Yes.  He gave me some "crack" cocaine.

21          MR. SNYDER:   And may I approach?

22          THE COURT:   (Nodding head.)

23  BY MR. SNYDER:

24  Q    This is Government's Exhibit 4.  Is this the "crack"

25  cocaine that Russell Hairston gave you on November the 24th of

# EXHIBIT
# F

Killeen Police Department
Investigative Supplement Report - C (OCD)

| Complainant:<br>State of Texas | Location:<br>Killeen | Beat: | Case#<br>97- 38836 |
| --- | --- | --- | --- |
| Offense:<br>Delivery of cocaine over 1 gram | Date:<br>March 23, 1998 | Page:<br>1 | Class: |

Ben Hall was arrested in December of 1997 for possession of cocaine with intent to distribute and will be prosecuted Federally.  Ben Hall was not positively identified in this case and there will be no further investigation.

THIS CASE IS CLOSED BY EXCEPTION.

| Reporting Officer:<br>Lorenz # 104 | Supervisor Approving:<br>COO Sgt | Suspect Description this page<br>( ) Yes (X) No |
| --- | --- | --- |
| Status: | Reviewer: | UCR Disposition: |